Welcome to the third day of our panel sitting here in Atlanta. You know the lighting system, I'm sure. When the yellow light goes on, your time is drawing to a close, so begin to wrap up. If we take you beyond the red light, then don't worry about it. Just keep going. You'll be on our time and not yours. We have three cases this morning. The first one is case number 22-11980, United States v. Jirard Kincherlow. Ms. Kyle. Thank you, Judge Jordan, Judge Lagoa, Judge Kimes. There's a whole dystopian world out there that you and I will never experience or fully understand, I think. It's kind of maybe a Charles Dickinson environment that one finds in Cheapside and Oliver Twist. Drug dealers and professional sex workers, like J.D. in this case, who'd been in this professionally as a for money on an adult online sex web or site for prostitution geared to 18-year-olds and above, even though she was at the time 13, 14. The investigation that started all this was called Innocence. It's an oxymoron in this case because this was not an operation, at least in J.D.'s case, for runaway teenagers caught by child prostitution ring and forced into selling their bodies. J.D. was not an innocent child. I'm sorry. I'm sorry, Judge Lagoa. Go ahead, Judge Jordan. Yes? You know, there have been arguments made throughout the country that a defendant can't legally coerce, entice, induce, et cetera, a minor into prostitution or an unlawful sex act if that minor had already been engaged in the business of prostitution. That's basically the argument you're making here today on your first and second submissions, right? Correct. The problem for us, at least for me, is that we've rejected that argument already, and your brief doesn't seem to recognize that. We have a case, United States v. Rutgerson, decided in 2016, which says, and I'll quote just one sentence, to the extent Rutgerson suggests that an underage prostitute who holds herself out for sex cannot be induced within the meaning of 2422b as a matter of law, he is mistaken. And I understand the argument that your defense counsel are trying to narrow the scope of the statute. I get that. But it looks like we've rejected that argument, and I don't see how you can succeed in light of that precedent. But maybe I'm missing something. Well, I think that in this case it's somewhat different. You know, the 2422b targets the persuasion or solicitation of a minor, and that I agree with. And it's intended to prohibit acts that are designed to overcome the will of the minor. In this case, J.D., she was the one that contacted Mr. Cantrello, and she was the one that pursued, even stalked him. I think that in this case, if you look at what happened and look at the record, you will find that she was the one who was acting in an adult capacity. She knew exactly what she was doing. And I don't think that in this case, those cases involving the inducement really apply. In fact— And he — didn't he — didn't Mr. Cantrello help set her up with other clients? He — he did. He was — he set her up — well, he didn't set her up. He introduced her. Okay. We'll use that word. He introduced her to others. And what was his take or interest in doing that? Did he do it out of the goodness of his heart, or was there something in there — in it for him, whatever that might have been? We honestly don't know. The record doesn't reflect whether he received any of the proceeds from that introduction. She had been really bugging him, and she'd been tenacious. And she'd come to him and said, I've got to have money. I've got to have money. I've got to have money. He knew she was a prostitute. And he said, look, babe, here. It's your option. I can introduce you to someone. You decide what you want to do. And that is what happened. And interestingly, you know, at sentencing, there was an enhancement suggested owing to undue influence. And the district court, Judge Walker, who's, you know, a wonderful judge, found that Mr. Kentrelow did not exert undue influence over JD. This is simply a case where, you know, she was on an adult website. She held herself out to be an adult. She was driving, gave the impression that she was an adult. In fact, I think there's in the transcript that she told Kentrelow that she was a college freshman. And should he have had sex with her? No, of course not. But that's not what he's charged with. He should have been This is the wrong charge. Should he have introduced her to somebody? No. Counsel, let me ask you, and I agree with Judge Jordan that I believe that's foreclosed, but let me ask you about a particular factual deal. On November 11, 2018, Facebook Messenger, the transcript shows that JD said, I, babe, did you, do you buy beans? And Kentrelow said, yes, and it's agreed, I believe that beans mean pill type illegal drugs or legally, drugs that are being illegally sold. And JD said, you're trying to buy some beans. And Kentrelow said, you got some, plus I got a play. And the play was a sexual setup. White boy, top dollar, this my heavy treat, treat him nice because he's going to pay. That's an instance, I believe, where the transcript shows that JD called interested in a drug deal. And Kentrelow, the defendant, stared her, induced her, or incited her instead into a sex for cash transaction. Am I misreading that? That's exactly what happened. Well, we can continue because then it says Kurtzlow. No, because he's not ready right now. Hold fast, babe. I'm trying to get us paid. Paid, to get us paid. That is accurate. But what I think was going on was that she was seeking money from Kentrelow and had been doing so. View, plus get cleaned. He's going to be a great gentleman. Dollar sign, dollar sign, dollar sign, dollar sign. And clean means get your body clean physically. And money meant that you would get paid for sex. It's not pretty. Not pretty. Not pretty. It's not even close. It's also not pretty because JD is a minor who was sexually abused at home. And is out doing what she's doing because of her, the fact that an adult sexually abused her. And now other adults are sexually abusing her. And your client is facilitating that sexual abuse. You don't have to answer. Thank you. Judge Codds, in response to your answer, to your question, I think the situation is more complex. I think that she was asking for money. She continued to ask. No, she wasn't. No, no, counsel, she wasn't. She was asking for a drug deal. Specific way to get money. She didn't just say, tell me however I can get money. She said, basically, do you buy beans, pills, drug pills? And he basically said, yeah, I got to play for you. I can set you up with a white boy. He's nice. Get yourself clean. We'll arrange the sex deal. Let me work out the money. If that's not incitement to engage in sex instead of illegal drugs, there's no defense in the statute that if the reason you incite somebody to engage in sex for money and they're underage is that you don't want them dealing in drugs or they want to deal in drugs. That's not a defense. Am I missing something? What am I missing? It's hard not to agree with you, quite frankly. Don't struggle too hard. It's tough. The whole situation is tough. She's a drug addict. He's a drug dealer. She's a prostitute. He took advantage of her insofar as her age. I'm not sure whether he really knew that she was 14 since, in light of her, the initial contact came through an He should not have been prosecuted, in my mind, under this charge, the 2422. He should have been charged for drugs. Certainly, that would have been an easy conviction. Maybe sexual assault. Maybe statutory rape in state court. Maybe contributing to the delinquency of a minor. Should adults be having sex with 14-year-olds? No. But I think the government filed the wrong charge in this case, and I don't think they met the burden of proof. All right. Thank you very much. You've saved your time for rebuttal, Ms. Kyle. May it please the Court. Winifred Acosta on behalf of the United States, the appellee. Your Honors, before I get started, I would like to bring to the Court's attention that we filed a notice of correction to a legal citation reference in our brief. It was filed on in the brief. The reference in the brief is that the Albury case held that there's no abuse of discretion where there is sufficient evidence to support the verdict in the context of an inconsistent verdict. However, that was with regards to a motion for judgment of acquittal, not a motion for new trial. There was discussion of a motion for new trial in that case, but that particular reference was in regards to a motion for judgment of acquittal. So I just wanted to make sure that the Court was aware that we had filed the notice. All right. Thank you very much. Yes, Your Honor. Your Honor, starting with the first issue, there are four issues. The first one is the denial of the motion for new trial, and the evidence here does not preponderate heavily against the verdict to suggest a miscarriage of justice for the reasons that we've already heard. The appellant... No, we've talked about... We discussed sufficiency. Yes. Sufficiency is not exactly the same thing as a motion for a new trial based on weight of the analysis plays into it, right? Because you can theoretically grant a new trial where the evidence is legally sufficient but really, really thin, and the district judge in the exercise of his or her discretion thinks that the evidence heavily preponderates in favor of acquittal. Yes, Your Honor. That's correct. Yes, Your Honor. Even though there's obviously an evidentiary overlap. That's correct. Yes, Your Honor. And we believe here that with the evidence no uncertainties, no discrepancies to cause that shift to meet that threshold. The evidence clearly shows that the appellant knew the situation of JD. He knew that she was vulnerable. He knew that she was at risk. He knew that she was a drug addict, and he took advantage of the situation. And why did he do this? He didn't do it out of the goodness of his heart. He did it for himself. And the evidence shows that with his knowledge of knowing that she was a drug addict, he used that to implore her as a prostitute. And the totality of his conduct shows that it was his intent to cause her assent to agree to engage in prostitution. And how did he do that? He did that a multitude of ways. He used words of endearment in their exchanges. My little babe, he actively described the play. He introduced the play. Then he described the play as white boy top dollar. He used eye-catching phrases to entice her. Treat him nice because he going to pay. He going to be a great gentleman, dollar sign, dollar sign, dollar sign. He knew that JD was interested in getting drugs. And how was he going to get the drugs? He was going to get the drugs by the money, money from engaging in prostitution. So the totality of his conduct showed that his intention was to convince her, to persuade her, to induce her, to entice her, and to coerce her into engaging in prostitution. And that's exactly what he did. Do you think this rises to the level of coercion? I mean, we have 24, 22 cases really involving coercion. Do you think this is coercion given the fact that she was involved in prostitution already? I mean, it's one thing to say that she was induced, persuaded, enticed, but coerced is a pretty strong word given the underlying background of what happened here. And yes, Your Honor, and I would agree that the facts are more tailored to the initial three verbs as opposed to the coercion. Coercion is taking it to another level. However, it's either of the verbs. As long as he intended to do any of those things, then it would be sufficient on a 24, 22-B. So his conduct showed that that was his intention, to induce J.D., and that was sufficient under the statute. Were there any other incidents that were as clear as the one that Judge Carnes introduced and the one you just discussed? Yes, Your Honor. That J.D. testified to or that the Facebook messages described? There were other Facebook messages when he said, let me set it up, when he said, send a pic of you, plus get clean. He gonna be a great gentleman, dollar sign, dollar sign, dollar sign. Again, inducing her to make sure that she's physically clean so that it would be more profitable. Also, he said, no cuss, he said, not ready yet, not hold fast, babe. I'm trying to get us paid. Again, he's indicating that he's inducing her so that she'll engage in prostitution and it will be profitable for himself as well as for her. Get us paid. And there's more. Also, he said, you know, you gonna be straight. I'll never, I will never flaw you. So what he's saying right there is that he will do right by her. So he's inducing her by saying, do it my way and it will be profitable. You'll be straight. It will be profitable. You'll gain from this. So that's the way that he was inducing her, persuading her, enticing her. And he continued to do so. He also said, come back up my way and trust me, you will always be straight. And that's word. Again, he is making sure that he has earned her trust. And then he is, he is inducing her to do what he wants her to do, which is to engage in prostitution. He also mentioned that the play had $150 a previous day. Well, he's using that magical number to grab her attention, to let her know that, again, this is white boy, top dollar. So this is someone who has money. And in order to get this money, here's what you have to do. And he continued to give her instructions on what to do in order again, for it to be profitable. And regardless of the fact that she held herself out as someone who was willing to sell her body, it doesn't change the fact that she was induced, particularly under Rutgerson. The second issue is on the motion for the denial of the Rule 29 motion. And here we would make the same argument that a reasonable inference could be made that the whole reason... If we agree with your motion for new trial that moves to Rule 29, obviously, does it not? Yes, Your Honor. Okay. Before you get off this topic, and I'll admit this is a matter of more of curiosity than of premise in any analysis of the particular facts and issue in this case, how long have you been a government prosecutor? How long have you been with the government in criminal cases? How long have I been in AUSA? Yes. Yes, ma'am. 20 years in September. How many? 20 years in September. Okay. Let me ask you, have you ever seen or heard about a motion for new trial as opposed to judgment of acquittal in a criminal case? Have I seen a motion for a new trial? I have seen... Yeah, actually, granted. I mean, it's kind of like the unicorn. We hear a lot about it, but hardly ever spot one. I think I've seen one in 30 years on the bench. Of course, we just get them on appeal. But I was just curious about that. Maybe that happens and you just don't hear about it because it doesn't make its way up here. And maybe the government decides not to retry somebody once granted. But forgive me for taking you off the argument, but this was the opportunity I had to find out what you knew about it. I would have to agree with you, Your Honor. I've not seen one granted, and I'm hopeful that I will not see this one granted based on the record. If there are no other questions regarding Issue 1, I will move on to Issue 2. Okay. On Issue 2, it is the government's position that there was sufficient evidence to support the verdict. When considering the evidence in the most favorable light, in favor of the government, there was sufficient evidence to establish the appellant's intent, particularly as you review the conduct I've just cited, as well as everything that was discussed in the brief. On the third issue, the third issue is with regards to the definition of induced that was used in the jury instructions. And we believe that the appellant's attack is foreclosed by the Morrell decision. And the jury instructions follow the 11th Circuit pattern jury instructions, which was also in compliance with the precedent of Morrell. And, therefore, there was no abuse of discretion in the court's drafting of the jury instructions with the definition of induced and reliance upon Morrell. The fourth issue is with regards to a variance between the indictment and the evidence. We believe there was no variance. Even if there was a variance, which, again, the government disputes, it wasn't fatal because the appellant's substantial rights were not affected. The appellant had sufficient notice of his charges. The district court probably found that the statute, as well as the 11th Circuit pattern jury instructions, all used the disjunctive. And, in fact, the government's proposed jury instruction, which was filed at least two weeks prior to trial, also tracked the statute. His argument is that the variance results from the indictment being phrased in the conjunctive. But the problem is we have a line of cases holding that you can a disjunctive statute in the conjunctive and then a trial prove what's really at issue, which is the disjunctive. That is correct. Yes, Your Honor. And, again, the appellant had ample notice of the disjunctive being used to allow the government different ways in which to prove a violation of 2422B. So, on each of the issues, the government argues that the district court was correct. The district court was correct in the denial of the motion for a new trial. The district court was also correct in the denial of the motion for judgment of acquittal. And the district court was correct in the instruction it gave on the term induced, and there was no variance between the indictment and the evidence presented at trial. And with that, the government asked this court to affirm the judgment and sentence. If there are no further questions, I yield my time. All right. Thank you very much. Thank you. The court instructed the jury that the definition of induced was to stimulate or to cause a verdict. The verdict form only listed enticement and coercion. That was what was on the verdict form itself, as I recall. Actually, my position is that to cause really broadened the scope of the statute, and it permitted a conviction without the finding of an attempt or an actuality of overcoming the will of a minor. The cause, the concept of cause, or of coercion, rather, I'm sorry, Your Honor, I'm not thinking well, of coercion indicates force, some kind of, if you look at Black's Law Dictionary, to compel an act or choice by force or threat. And I don't think that happened in this case. But coercion is not the only way to prove liability under the statute, right? No, that's true. And the jurors were instructed that the defendant can be found guilty of this crime if the following facts are proved beyond a reasonable doubt. The defendant knowingly persuaded, induced, enticed, or coerced J.D. to engage in prostitution as charged. That's what the instructions were, correct? Correct. I simply have a problem with the use of the word to cause. It's wrong. It's not the right term. And because it really, I find that it really does encompass more conduct than the... This is tough, I'll tell you right now, because I have a problem with the charge itself, and I don't have a problem so much with the jury instructions, because I understand the persuasion and the enticement. But I just think that the charge itself was overbroad. It was inappropriate under the facts of the case. The weight of the evidence didn't support those facts. And with that, I really don't have anything else to say. All right. Ms. Kyle, we know that you were appointed as counsel for Mr. Kintreland. We want to thank you for your service to him and to us. We appreciate it. Thank you, Judge Jordan. Okay, thank you.